LE ROY (TATHAM v.). See Cases Nos, 13,-760–13,762.

LEROY (WILSON v.). See Case No. 17,817.

## Case No. 8,273.

### LE ROY v. WRIGHT et al.

[4 Sawy. 530.] 1

Circuit Court, N. D. California. Aug. 12, 1864.

APPEAL OPENS THE WHOLE ISSUE—POSSESSION OF REAL PROPERTY GIVES USE OF SAME — COURTS OF EQUITY WILL NOT INJOIN THREATENED TRESPASS.

1. An appeal to the district court of the United States from a decree of the board of land commissioners created under the act of 1851 [9 Stat. 631], confirming a claim under a Mexican grant in California, opens the whole issue for consideration. The case is to be heard in the district court de novo, upon the papers and testimony used before the board, and such further evidence as either party may produce.

[Explained in San Francisco v. U. S., Case No. 12,316. Cited in Grisar v. McDowell, Id. 5,-832.]

2. Where the title to real property is in dispute between two claimants, and one of them takes possession of the property, he will not be injoined from its occupation and the erection of buildings thereon before the title is judicially determined.

3. Courts of equity will not ordinarily interfere to injoin the commission of a threatened trespass to real property, unless the trespass be one going to the destruction of the substance of the estate, such as the extracting of ores, the cutting down of timber, the digging of coals and the like. The jurisdiction of the court, in such cases, is asserted for the preservation of the property pending proceedings at law for the determination of the title.

[Cited in Erhardt v. Boaro, 113 U. S. 539, 5 Sup. Ct. 566.]

[Cited in Newall v. Staffordville Gravel Co. (N. J. Ch.) 13 Atl. 271; Hunt v. Steese, 75 Cal. 624, 17 Pac. 922.]

Suit in equity to restrain the defendants [George Wright and others] from entering upon certain real estate in San Francisco, alleged to be the property of the complainant [Theodore Le Roy], and appropriating it to the use of the United States.

B. S. Brooks and George E. Whitney, for complainant.

Delos Lake, U. S. Atty., for defendants.

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

FIELD, Circuit Justice. This is a suit to restrain the defendants from entering upon certain real estate situated at a place known as Black Point or Point San Jose, in the city of San Francisco, alleged to be the property of the complainant, and appropriating it to the use of the United States. The complainant, or his immediate grantor, has been in possession of the premises in question for several years, and claims to be the owner in fee of the same, deriving his title from the city of San Francisco by virtue of the ordinance of the common council for the settlement of land titles in the city, passed on the twentieth of June, 1855, commonly known as the "Van Ness Ordinance," and the act of the legislature of the state confirmatory thereof.

The defendants, who are officers of the army of the United States, and acting under the orders of the secretary of war, have taken possession of an adjoining tract of land at the same Black Point, and commenced the erection of fortifications for the general government thereon; and they declare their intention to take like possession, under the same authority, of the premises in question, and to appropriate them for the erection of barracks and other buildings required in connection with the fortifications.

The complainant, therefore, invokes the authority of the court to restrain such appropriation until compensation to him for the property is previously made.

The defendants controvert the complainant's claim of ownership; they deny that the land is private property, and insist that it is the property of the United States, upon which the complainant has intruded without color of right. The question of title is thus, at the outset, raised in the case. And the documents produced by the complainant as evidence of his title, so far from establishing the title in him, show conclusively that the title is a matter in controversy now under consideration in a judicial proceeding pending before the district court of the United States. The complainant, as we have stated, derives his title from the city of San Francisco, through the operation of the Van Ness ordinance. At the time that ordinance was passed, there was much diversity of opinion among the members of the profession as to the title of the land embraced within the limits of the charter of 1851; some of them holding the land to be public property of the United States, and others holding that the title was in the city, as successor of a Mexican pueblo established and in existence at the date of the acquisition of the country. The ordinance was passed to meet both of these views. The first section was framed upon the supposition that the land above the natural high-water mark of the bay belonged to the United States, and it provided for the entry of the same at the proper land-office. It does not appear from the evidence before us, that any entry was ever made as thus provided;

or that the price per acre required by law, was ever tendered to render the entry, if made, effectual. Besides, there is evidence in the case tending to show that if the land embraced within the city limits belonged to the United States, that portion which constitutes Black Point (sometimes called Point Jose or San Jose,) was, as early as 1850, exempted and reserved from sale for public purposes. There is on file in the office of the surveyor-general of California, a notice from the commissioner of the general land-office at Washington, bearing date on the twenty-fourth of June, 1851, informing the surveyor that such reservation had been made by President Fillmore on the sixth of November of the previous year.

The second section of the ordinance was framed upon the supposition that the city possessed the title to the lands within the corporate limits, and by its provisions she relinquished and granted all her title and claim thereto, with certain exceptions, to the parties in the actual possession thereof, by themselves, or tenants, on or before the first of January, 1855, provided such possession was continued up to the time of the introduction of the ordinance in the common council, or, if interrupted by an intruder or trespasser, had been or might be recovered by legal process. The party through whom the complainant traces his title was in such possession of the premises in question, and hence acquired whatever title the city possessed at the passage of the ordinance. The city then asserted title as successor of the pueblo to four square leagues of land. She had presented her claim for the same to the board of land commissioners, created under the act of congress of March 3, 1851, and the board, in December, 1854, had confirmed the claim to a portion of the four square leagues, including the premises in question, and rejected her claim to the residue. From this action of the board an appeal was taken, by the filing of a transcript of the proceedings and decision of the board with the clerk of the district court. The appeal was by the statute for the benefit of the party against whom the decision was rendered—in this case, of both parties—of the city, which claimed a larger quantity of land than that confirmed; and of the United States, which denied the claim of the city altogether; and both parties gave notice of their intention to prosecute the appeal. Subsequently, in February, 1857, the attorney-general withdrew the appeal on the part of the United States, and upon the stipulation of the district attorney, the district court, in March, 1857, ordered the appeal to be dismissed, and gave leave to the city to proceed upon the decree of the commission as upon a final decree. The counsel of the complainant regards this decree as closing the controversy between the city and the United States as to the land to which the claim was confirmed. But in

this view he is mistaken. Had the city also withdrawn her appeal such result would have followed. But this course the city declined to take. She continues to prosecute the appeal for the residue of her claim to the four square leagues.

This leaves open the whole issue with the United States. The proceeding in the district court, though called in the statute "an appeal," is not, in fact, such. It is essentially an original suit, in which new evidence can be given, and in which the entire case is to be tried over. This was expressly held in the case of U. S. v. Ritchie, 17 How. [58 U. S.] 533. In that case it was contended that the act of congress, in prescribing an appeal from the board of commissioners to the district court was unconstitutional, as the board was not a court under the constitution, and could not be invested with any portion of the judicial power conferred upon the general government; but the supreme court, Mr. Justice Nelson delivering the opinion, said: "That the suit in the district court is to be regarded as an original proceeding, the removal of the transcript, papers and evidence into it from the board of commissioners, being a mode of providing for the institution of the suit in that court. The transfer, it is true, is called an appeal; we must not, however, be misled by a name, but look to the substance and intent of the proceeding. The district court is not confined to a mere re-examination of the case, as heard and decided by the board of commissioners, but hears the case de novo upon the papers and testimony which had been used before the board, they being made evidence in the district court, and also upon such further evidence as either party may see fit to produce."

The district court then, as thus held, "hears the case de novo." Every question raised before the commissioners may be raised again before the district court. No fact is concluded by the decree of the board. It follows, from this view of the case, that the title to the premises in question is far from being settled, that it is, in fact, a matter now pending for determination in a judicial proceeding between the city and the United States.

Nor is the case of the complainant aided by the recent act of congress "to expedite the settlement of titles to lands in the state of California." By that act the right and title of the United States to the lands within the corporate limits of the city, as defined by the charter of 1851, are relinquished and granted to the city for the uses and purposes specified in the Van Ness ordinance, subject to certain exceptions and reservations, among which are all sites or other parcels of land which had been previously, or were then, "occupied by the United States for military, naval, or other public uses," or which might be designated by the president within one year after the return to the general land-office of

an approved plat of the exterior limits of the city.

The title being in dispute, there is no ground for considering the question of compensation. The case is one where, upon the complainant's own showing, a mere naked trespass is threatened—the entry by the defendants upon the premises, and the erection of buildings thereon. The ancient doctrine of equity was not to interfere in such case, even where the title was undisputed, but to leave the party to his legal remedy. And even after the doctrine had been modified in later cases, if the title to the property were disputed, that fact was regarded as sufficient to exclude the jurisdiction of the court. In Pillsworth v. Hopton, 6 Ves. 51, Lord Eldon stated that he remembered being told from the bench, in early life, "that if the plaintiff filed a bill for an account, and an injunction to restrain waste, stating that the defendant claimed by a title adverse to his, he stated himself out of court as to the injunction." And in the case of Norway v. Rowe, 19 Ves. 147, which arose several years afterward, the same distinguished chancellor observed that the court had certainly proceeded to extend injunctions to trespass, but he did not recollect that it was ever granted on that head, where the fact of the plaintiff's title to the property was disputed by the answer. The ancient doctrine in this respect has been greatly modified, and it is the common practice at this day for the court to issue injunctions where the title is in dispute. But in such instances a stronger and clearer case of irremediable mischief must be presented than where the title is indisputed. The trespass threatened must be one going to the destruction of the substance of the estate, such as the extracting of ores, the cutting down of timber, the digging of coals, and the like. The jurisdiction of the court in these cases is asserted for the preservation of the property pending proceedings at law for the determination of the title of the parties. Jerome v. Ross, 7 Johns. Ch. 332; West v. Walker, 2 Green, Ch. [3 N. J. Eq.] 282; Kerlin v. West, 3 Green, Ch. [4 N. J. Eq.] 452; U. S. v. Parrott [Case No. 15,998]; Perry v. Parker [Id. 11,010].

In the case at bar, the alleged trespass threatened will not produce irreparable mischief or tend to the destruction of the inheritance. The barracks and other buildings which the defendants propose to construct, will not impair the value of the property, at least to such an extent that an adequate remedy may not be obtained in the ordinary course of the law. The bill must be dismissed, and a decree to that effect will be entered.

[For another action by the same plaintiff against defendants who claim under the Van Ness ordinance, see Case No. 8,266.]